```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Apr 05, 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
GUY ZAPPULLA,                                           :
                                                        :
                              Plaintiff,                :       11 Civ. 6733 (JMF)
                                                        :
              -v-                                       :       OPINION AND ORDER
                                                        :
COMMISSIONER BRIAN FISCHER, *et al.*,                   :
                                                        :
                              Defendants.               :
                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Guy Zappulla, a state prisoner proceeding *pro se*, brings this action pursuant to Title 42, United States Code, Section 1983, claiming violations of his Eighth and Fourteenth Amendment rights during his incarceration. Defendants move to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

      Generally, in considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts are limited to the facts alleged in the complaint and are required to accept these facts as true. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)). In addition, however, a court may consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See, e.g.*, *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *see*

*also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 1553 (2d Cir. 2002) (applying rule to district courts). Where, as in this case, "exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein." *Wilson v. N.Y.C. Police Dep't*, No. 09 Civ. 2632 (PAC) (HBP), 2011 WL 1215031, at *6 (S.D.N.Y. Feb. 4, 2011), *report and recommendation adopted*, 2011 WL 1215735 (S.D.N.Y. Mar. 25, 2011) (citing *Smart v. Goord*, 441 F. Supp. 2d 631, 637-38 (S.D.N.Y. 2006), *reconsidered in part*, No. 04 Civ. 8850 (RWS), 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008)). When a court considers documents outside the four corners of the complaint, it is not required to accept as true facts alleged in the complaint that are contradicted by the documents. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 n.1 (2d Cir. 2012), *cert. denied*, No. 12-528, 2013 WL 1091772 (U.S. Mar. 18, 2013). Thus, the following facts are taken from the Amended Complaint and are assumed to be true for purposes of this motion, except where they are contradicted by documents attached to, or incorporated into, the Complaint by reference or by records and reports of administrative bodies.[1]

## A. Plaintiff's First Trip to Green Haven

Plaintiff is a state prisoner. On June 8, 2010, Plaintiff was brought to the Green Haven Correctional Facility ("Green Haven") for a scheduled medical consultation with an orthopedic surgeon. (Am. Compl. ("Compl.") ¶ 1 (Docket No. 32)).[2] Initially, Plaintiff was allowed to use the facility pay phone and socialize with other inmates in the recreation room. (*Id.* ¶ 2). But

---

[1] The Court has not considered any matters outside the pleadings, except those permitted under the law discussed above, and therefore declines to convert Defendants' motion to one for summary judgment.

[2] Plaintiff uses a variety of numbering schemes in his Amended Complaint. Citations in this opinion are to Plaintiff's Statements of Facts and refer to the relevant paragraphs therein.

Plaintiff was then placed in Protective Custody, which meant he could not use the phone or go to the recreation room. (*Id.* ¶ 3). For five days, from June 9 to June 13, 2010, "Plaintiff politely and respectfully asked to speak to the area Sergeant" to rectify the situation and sought to use the recreation room and the phone. (*Id.* ¶¶ 4-8). All requests were denied. (*Id.*).

On June 17, 2010, Plaintiff filed a grievance concerning his placement in Protective Custody and the denial of phone and recreation room privileges. (*Id.* ¶ 10). On July 12, 2010, Plaintiff received a response to the grievance, in which — according to Complaint — the author fabricated that Plaintiff was afforded recreation as well as access to the phone. (*Id.* ¶ 11; *id.* Ex. 2). Plaintiff appealed the outcome of the grievance to the Superintendant. (*Id.* ¶ 12; *id.* Ex. 3). Plaintiff received a response to his appeal indicating that he had utilized the amenities (*id.* Ex 4), which prompted Plaintiff to further appeal his grievance to the Central Office Review Committee (the "CORC"). (*Id.* ¶ 13). Plaintiff's appeal to the CORC was also denied on the grounds that he was afforded all of the privileges to which he was entitled. (*Id.* ¶ 14; *id.* Ex. 5).

**B. Plaintiff's Second Trip to Green Haven and Surgery on His Right Elbow**

On August 24, 2010, Plaintiff was returned to Green Haven and placed in an isolation cell. (*Id.* ¶ 15). Two days later, Plaintiff was brought to the Westchester County Medical Center to receive scheduled orthopedic surgery on his right elbow. (*Id.* ¶ 16). Plaintiff concedes that, from August 25 to September 4, 2010, he was afforded a television set, unlimited use of the phone in his hospital room, and access to the book cart. (*Id.* ¶ 17). On September 4, 2010, however, Plaintiff was issued a misbehavior report for conducting a three-way call from his hospital room, which is a violation of the rules. (*Id.* ¶ 18). As a result, the television and phone were removed from Plaintiff's room that afternoon. (*Id.* ¶ 19). On September 10, 2010, a hearing was held to determine the punishment for Plaintiff's violation of the rules by making a

3

three-way call. (Okereke Decl. Ex. B (Docket No. 40)). Plaintiff admitted to a violation of the rules and received a sentence of 180 days in keeplock, which the hearing officer suspended because Plaintiff "has no similar disciplines in his history." (*Id.* at 3; *see also* Compl. Ex. 12 (describing the outcome of the hearing)). From September 6 to 13, 2010, Plaintiff was denied access to recreation, nail clippers, and the barber, but was allowed to use the phone briefly on several occasions. (Compl. ¶¶ 21-22). On September 21, 2010, Plaintiff asked for, but was denied, pain medication to address pain in his arm that had developed over the prior two days, and was also denied access to the phone, recreation, nail clippers, and barber. (*Id.* ¶¶ 25-27).

On September 5, 2010, Plaintiff filed grievances relating to this treatment during his second trip to Green Haven and the denial of physical therapy that he had been prescribed, which were consolidated. (*Id.* ¶¶ 28-29; *id.* Ex. 7). Thereafter, Plaintiff received several responses to his grievance, both before and after he left Green Haven. (*Id.* ¶¶ 30-32). Plaintiff considered these responses unsatisfactory and appealed them to the Superintendant. (*See id.* ¶ 33 (describing the Superintendant's response to Plaintiff's appeal)). Plaintiff also appealed the Superintendant's decision to the CORC. (*Id.* ¶ 34). On January 26, 2011, the CORC responded to Plaintiff's appeals, indicating that his physical therapy appointments were "pending scheduling" and that his treatment at Green Haven was proper given both his "keep lock" status and the fact that he had received a reduced "keep lock" sentence at the hearing officer's discretion. (*Id.* Ex. 12).

## C. Surgery on Plaintiff's Right Shoulder

On May 11, 2011, Plaintiff received "orthoscopic" surgery (by which he presumably means arthroscopic surgery) on his right shoulder, after which the surgeon prescribed pain killers for several days, ordered that Plaintiff's bandages be changed, and provided a date ten days after

4

the surgery when numerous staples in Plaintiff's shoulder were to be removed. (*Id.* ¶ 38). Contrary to these instructions, Plaintiff received pain medication only twice, never had his bandages changed, and did not get the staples taken out until July 6, 2011. (*Id.* ¶ 39). On June 1, 2011, Plaintiff filed a grievance at Clinton, where he is permanently located, for denial of medical care after his shoulder surgery. (*Id.* ¶ 40; *id.* Ex. 13). When Plaintiff did not receive a response to his grievance by June 16, 2011, he filed a second grievance (which he at times characterizes as an "appeal" because the second grievance asserted that there was a "constructive denial" of his first grievance). (*Id.* ¶ 41; *id.* Exs. 14, 16; Pl.'s Opp'n 2-3). On June 23, 2011, Plaintiff received a response to this second grievance, indicating that there was no record of Plaintiff's June 1, 2011 grievance, and that he should re-file it. (*Id.* ¶ 42; *id.* Ex. 15). On June 25, 2011, Plaintiff sent a letter purportedly appealing the "constructive denial" of his grievance to the CORC, bypassing the Superintendant. (*Id.* ¶ 43; *id.* Ex. 16).

**D.  Plaintiff's Claims and Procedural History**

Plaintiff filed the initial Complaint on September 22, 2011. (Docket No. 1). After Defendants' first motion to dismiss (Docket No. 26), Plaintiff filed an Amended Complaint on May 7, 2012, alleging claims against seven state corrections officers and officials in their individual and official capacities. (Docket No. 32). In particular, Plaintiff's Amended Complaint alleges three counts, one for denial of due process relating to his placement in medical isolation and protective custody (Count One) (Compl. ¶¶ 60-64), and two for denial of medical care relating to his treatment following surgeries on his right elbow (Count Two) and right shoulder (Count Three) (*id.* ¶¶ 65-71). There is no indication that Plaintiff ever served the Amended Complaint on two Defendants, Officer B. Hotaling and Officer Beachy, and they have not appeared. The other Defendants now move to dismiss.

5

## DISCUSSION

### A. Legal Standards

Although Defendants move to dismiss the Complaint pursuant to both Rule 12(b)(1), for lack of subject-matter jurisdiction, and 12(b)(6), for failure to state a claim, none of their arguments actually relates to the Court's subject matter jurisdiction.[3] To survive a Rule 12(b)(6) motion, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)

---

[3] Defendants may have viewed Rule 12(b)(1) as the proper vehicle to argue that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. (*See* Defs.'s Mem. 9-12 (Docket No. 38)).  The exhaustion requirement, however, is not jurisdictional, but an affirmative defense that may be raised under Rule 12(b)(6) if, on the face of the complaint, it is clear plaintiff did not exhaust all remedies.  *See, e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 101 (2006); *Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011); *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (per curiam).

(internal quotation mark omitted).  Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Bodley v. Clark*, No. 11 Civ. 8955 (KBF), 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]ro se complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

## B.  Plaintiff's Claims Relating to His Right Shoulder

As an initial matter, Plaintiff's claims relating to this right shoulder are subject to dismissal for failure to exhaust his administrative remedies.  Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must exhaust any available administrative remedies before filing a lawsuit.  *See* 42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement is mandatory, and courts are not free to waive or ignore it.  *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 85 (holding that under the PLRA "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory").  Moreover, the PLRA requires "proper exhaustion," meaning that "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s]" will not satisfy the exhaustion requirement, and that a prisoner must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 83-84, 90 (internal quotation marks omitted) (emphasis in original); *see also Amador*, 655 F.3d at 96 (quoting *Woodford* for the same proposition).  Additionally, informal letters, oral conversations, and other communications outside of the formal grievance and appeal process do not satisfy the exhaustion requirement. *See, e.g.*, *Arce v. Keane*, No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *4 (S.D.N.Y. Mar. 9, 2004).

In the New York State corrections system, a prisoner must take three steps to exhaust his or her administrative remedies: (1) file a grievance with the Inmate Grievance Relations Committee ("IGRC") at his or her facility; (2) appeal an adverse decision from the IGRC to the superintendent of the facility; and (3) appeal an adverse decision from the superintendent to the CORC.  *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; N.Y. Correct. Law § 139; *see also Amador*, 655 F.3d at 96-97 (discussing New York State's three-step administrative remedies scheme).  If prison officials fail to respond to a prisoner's grievance or initial appeal, that does not excuse a prisoner from pursuing the matter to the third step, as prisoners are free to appeal the failure to respond to the next higher authority.  *See, e.g.*, *Torres v. Carry*, 691 F. Supp. 2d 366, 370 (S.D.N.Y. 2009); *see also Taylor v. N.Y. State Dep't of Corr.*, No. 03 Civ. 1929 (PKC), 2004 WL 2979910, at *6 (S.D.N.Y. Dec. 22, 2004) (explaining that "[i]t has been accepted among Courts in this District that a failure to receive a response from the IGRC does not relieve an inmate of his obligation to pursue an appeal or otherwise exhaust his administrative remedies" and citing cases).

Prior to the Supreme Court's decision in *Woodford*, the Second Circuit and some district courts had established certain exceptions or limitations to the exhaustion requirement.  *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004) (recognizing unavailability of administrative remedies, estoppels, and special circumstances exemptions to exhaustion requirement). In *O'Connor v. Featherston*, for example, the Court held that lack of exhaustion may be excused "where (1) an inmate was led to believe by prison officials that his alleged incident was not a 'grievance matter' and assured that his claims were otherwise investigated, (2) an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded

8

or prevented his efforts, and (3) the state's time to respond to the grievance has expired." No. 01 Civ. 3251 (HB), 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002) (citations omitted). Although *Woodford*'s holding that "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s]" do not satisfy the PLRA exhaustion requirement casts some doubt on the soundness of these cases, the Second Circuit has not resolved whether any court-made exception to the exhaustion requirement survives. *See Amador*, 655 F.3d at 102 (recognizing that *Woodford* called the latter two *Hemphill* exceptions into question but declining to resolve the issue). *But see Messa v. Goord*, 652 F.3d 305, 309-10 (2d Cir. 2011) (treating the *Hemphill* exemptions as good law and finding that a prisoner is not entitled to a jury trial on the issue of whether he or she has asserted a valid excuse for non-exhaustion); *Pooler v. Nassau Univ. Med. Ctr.*, 848 F. Supp. 2d 332, 340 (E.D.N.Y. 2012) (treating the *Hemphill* framework as good law in the wake of *Messa*).

The Court need not resolve whether *Hemphill* and *O'Connor* remain good law, as Plaintiff's claim relating to his right shoulder must be dismissed for failure to exhaust either way. First, although Plaintiff allegedly filed a grievance with respect to that claim on June 1, 2011 (Compl. ¶ 40; *id.* Ex. 13), he did not receive a response to it. Instead of appealing that lack of response to the superintendent of the facility, however, Plaintiff filed a second grievance on June 16 or 17, 2011. (*Id.* ¶ 41; *id.* Ex. 14). And, while the IGRC did respond to that grievance, advising Plaintiff that there was no record of the initial grievance and that he should re-file it (*id.* ¶ 42; *id.* Ex. 15), Plaintiff did not re-file it, but merely sent a letter purportedly appealing the "constructive denial" of his first grievance to the CORC. (*Id.* ¶ 43; *id.* Ex. 16). Even under Plaintiff's version fo the facts, read in the light most favorable to him, Plaintiff, never actually appealed the June 1, 2011 grievance to the superintendent, which he was required to do even in

the absence of a response from the IGRC.  *See Mendoza v. Goord*, No. 00 Civ. 146 (GEL), 2002 WL 31654855, at *1 n.1, 2-3 (S.D.N.Y. Nov. 21, 2002) (dismissing prisoner's case for failure to exhaust administrative remedies where plaintiff filed a second grievance to contest IGRC's failure to respond to his first grievance, but failed to appeal either).  And, he never appealed to the CORC, as his letter purportedly appealing the "constructive denial" of his grievance does not suffice.  *See Arce*, 2004 WL 439428, at *4.  Because Plaintiff failed to go through each step of the grievance process, in order, Plaintiff has failed to exhaust his claim.

In opposing Defendants' motion, Plaintiff relies on *O'Connor* and argues that any lack of exhaustion should be excused because he made a "reasonable attempt" to exhaust.  (Pl.'s Opp'n 1-2).  Even assuming *arguendo* that the "reasonable attempt" exception survived *Woodford*, however, Plaintiff could not avail himself of it in this case.  Having failed not only to follow the established grievance procedures, but also the IGRC's specific instructions to re-file his June 1, 2011 grievance, Plaintiff cannot be said to have made a "reasonable attempt" to exhaust his administrative remedies.  This is very different from the situation in *O'Connor*, 2002 WL 818085, at *2, in which plaintiff had been unable to do more than make a "reasonable attempt" at exhaustion because he had been denied access to grievance forms.  Moreover, Plaintiff is well aware of the requirements to exhaust his administrative remedies, having properly appealed eleven grievances to the CORC from 2000 to 2010, including other grievances referenced in this Complaint.  (Hale Decl. Ex. A (Docket No. 39)).  Accordingly, all of Plaintiff's claims arising from the denial of medical care following his right shoulder surgery must be dismissed.

## C.  Plaintiff's Due Process Claims

Next, Plaintiffs' due process claims — relating to his detention in medical isolation or keeplock from June 8 to 13, 2010, and again from August 24 to September 23, 2010 — fail as a

matter of law.  It is well established that, in evaluating a due process claim, "the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) (brackets and internal quotation marks omitted).  A prisoner subject to discipline, such as special housing unit ("SHU") or administrative confinement, can show such a liberty interest "only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (per curiam) (quoting *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)); *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). In determining whether segregated confinement is an "atypical and significant hardship," courts must consider factors such as "'the extent to which the conditions of the . . . segregation differ from other routine prison conditions' and 'the duration of the . . . segregation imposed compared to discretionary confinement.'"  *Davis*, 576 F.3d at 133 (quoting *Palmer*, 364 F.3d at 64).

      Although the Second Circuit has explicitly declined to create a "bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," it has established "guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed."  *Palmer*, 364 F.3d at 64.  To the extent relevant here, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."  *Davis*, 576 F.3d at 133 (citing *Colon v. Howard*, 215 F.3d 227, 231-32 & 232 n.5 (2d Cir. 2000)); *see Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (stating that where a plaintiff endures onerous conditions for only a "brief interval," they must be "especially harsh" to be "atypical"); *see also, e.g.*, *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012) (dismissing plaintiff's due process claims for failure to establish a liberty interest where plaintiff did not allege unusual

11

conditions and was confined to the SHU for one three-month period and in keeplock for a separate sixty-day period). At the same time, the Court has cautioned that "SHU confinements of fewer than 101 days 'could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical.'" *Davis*, 576 F.3d at 133 (quoting *Palmer*, 364 F.3d at 65).

Applying these standards here, Plaintiff's due process claims fail as a matter of law. Liberally construed, Plaintiff's Amended Complaint states a claim with respect to his detention in medical isolation or keeplock for two discrete periods: one five-day period from June 8 to 13, 2010, and another thirty-one day period from August 24 to September 23, 2010. (Compl. ¶¶ 3-4, 15, 60-64; *see also* Pl.'s Opp'n VII). Considering these periods separately because they do not constitute a "sustained period of confinement," *Giano v. Selsky,* 238 F.3d 223, 226 (2d Cir. 2001); *see also, e.g.*, *Vogelfang*, 889 F. Supp. 2d at 511; *Bunting v. Nagy*, 452 F. Supp. 2d 447, 457 (S.D.N.Y. 2006), the first five-day period is plainly too short to state a claim, as Plaintiff has not alleged anything close to the kind of "especially harsh" conditions that could constitute an atypical and significant hardship for a mere five days in administrative confinement. *Sealey*, 197 F.3d at 586; *see, e.g.*, *Hynes v. Squillace*, 143 F.3d 653, 658-59 (2d Cir. 1998) (per curiam) (holding that twenty-one days of keeplock confinement did not give rise to a due process claim); *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998) (same with respect to eighteen days in the SHU, including exercise deprivation and verbal harassment); *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir. 1996) (per curiam) (same with respect to approximately twelve days in the SHU with the denial of "certain privileges that prisoners in the general population enjoy"); *Brown v. Graham*, 470 F. App'x 11, 13-14 (2d Cir. 2012) (summary order) (same with respect to two five-

12

day periods of "isolation in the infirmary" and ten days of keeplock confinement); *Willard v. Ramsey*, No. 9:07-CV-1156, 2010 WL 786296, at *5 (N.D.N.Y. Mar. 2, 2010) (adopting a report and recommendation, which found the same with respect to eleven days of segregated confinement).

The latter period is a closer call, in part because it is longer and in part because Plaintiff does allege that he endured atypical conditions of confinement. (*See* Compl ¶¶ 17-27, 64 (describing conditions of confinement); Pl.'s Opp'n 7 (same)). Specifically, Plaintiff alleges that he was kept alone in his hospital room twenty-four hours a day; made to feel ashamed and fearful of other inmates; deprived of recreation and thus sunlight; and denied a haircut, nail clippers, and use of the phone. (Compl. ¶ 64). In his opposition to Defendants' motion, Plaintiff also complains of "the deafening silence of being placed in a Medical Isolation Room," behind "airtight glass door[s]," which he describes as "in line" with a scene of "a horror movie w[h]ere the star actor has some terrible contagious disease." (Pl.'s Opp'n 7). Plaintiff's claims of complete isolation and deprivation, however, are contradicted by his own pleadings, as he acknowledges in his Complaint that, from August 25 to September 4, 2010, he was "afforded a television set as well as the unlimited use of a telephone in his hospital room, as well as access to the book cart" (Compl. ¶ 17); that he was allowed to use the phone on various occasions even after September 4th (*Id.* ¶¶ 21-22, 26); and that he spoke with both Defendant Franco and a nurse. (*Id.* ¶¶ 23, 25). More importantly, Plaintiff's hyperbole aside, his allegations — even taken together — do not rise to a level that would state a due process claim. *See, e.g.*, *Miller v. Bradley*, Civ. No. 9:09-CV-1035 (GTS/RFT), 2010 WL 3810001, at *3 (N.D.N.Y. Aug. 6, 2010) (recommending dismissal of a due process claim relating to forty-three days in the SHU without "egregious circumstances" and citing comparable cases), *report and recommendation adopted by*

13

No. 9:09-CV-1035 (GTS), 2010 WL 3809995 (N.D.N.Y. Sep 22, 2010).

In short, Plaintiff has failed to establish that he had a liberty interest protected by the Due Process Clause. Accordingly, his due process claims, including those for declaratory relief, must be dismissed.

**D. Plaintiff's Claims Relating to His Right Elbow**

Plaintiff's sole remaining claim is for denial of adequate medical care following surgery on his right elbow, for which he seeks both money damages and injunctive relief from all Defendants in both their individual and official capacities. (Compl. ¶¶ 76, 79-80, 88-89). Although Defendants do not raise the issue, to the extent that Plaintiff seeks monetary relief from Defendants in their official capacities, his claims are barred by the doctrine of sovereign immunity, and this Court lacks jurisdiction. *See, e.g.*, *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996) (holdingthat a Section 1983 suit for money damages against a state official in his official capacity was barred by sovereign immunity); *Boda v. Comm'r of N.Y. Motor Vehicles*, No. 12 Civ. 4098 (BMC), 2012 WL 3704713, at*2 (E.D.N.Y. Aug. 27, 2012) ("The sovereign immunity of the Eleventh Amendment extends to state officers who are sued in his or her official capacity since a suit brought against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.") (internal quotation marks and brackets omitted). Accordingly, those claims are dismissed.

By contrast, state officials may be sued in their individual capacities for money damages under Section 1983, provided that they were personally involved in the claimed constitutional deprivation. *See, e.g.*, *Scott v. Fischer*, 616 F.3d 100, 110 (2d Cir. 2010). Here, however, Plaintiff fails to allege the personal involvement of any Defendants, other than William Lee, in

14

his claim for denial of medical care following surgery on his right elbow.  Other than Lee, as described below, the only mention in the Amended Complaint of any Defendant is an allegation that Franco informed Plaintiff that he had been classified as a protective custody inmate.  (Compl. ¶ 23).  That allegation, however, is relevant only to Plaintiff's failed due process claim.  Moreover, it is plainly insufficient to establish Franco's personal involvement in any deprivation, as Plaintiff fails to allege that Franco did anything more than give him information.

Plaintiff attempts to cure these deficiencies by using his memorandum of law in opposition to Defendants' motion to allege additional facts, going so far as to state that various paragraphs "should also have read" as including more specific factual allegations.  (*See* Pl.'s Opp'n 8-13).  The procedural latitude granted to *pro se* litigants, however, "typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers."  *Salemo v. Murphy*, No. 11 Civ. 2525 (TPG), 2012 WL 4714765, at *2 (S.D.N.Y. Sept. 27, 2012); *see also Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 330 (S.D.N.Y. 2010) (declining to allow *pro se* plaintiffs to amend their complaint through their papers opposing defendant's motion to dismiss).  Accordingly, Plaintiff's claims for monetary relief against all Defendants other than Lee must plainly be dismissed.

Although overlooked by Defendants, Plaintiff has alleged the personal involvement of Lee (albeit by position, not by name) in his right elbow claim — specifically, that Lee denied the appeal of his grievance seeking physical therapy following his surgery.  (Compl. ¶¶ 33, 68; *see also id.* Ex. 10).  Until the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the personal involvement of a supervisor in this Circuit was evaluated by reference to the five-category test set forth in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Under that test, a supervisor's personal involvement could be shown by evidence that:

15

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* In *Iqbal*, however, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676. In the wake of that holding, district courts in this Circuit are divided on the validity of the *Colon* test, with some courts concluding *Colon* is no longer good law and others holding that *Colon* continues to apply at least where the alleged constitutional claim does not involve a discriminatory intent element. *Compare Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (holding that the second, fourth, and fifth *Colon* categories did not survive *Iqbal*), *aff'd*, 387 F. App'x 55 (2d Cir. 2010) (summary order), *with Qasem v. Toro*, 737 F. Supp. 2d 147, 151-52 (S.D.N.Y. 2010) (holding that *Iqbal* only invalidated *Colon* where discriminatory intent was an element of the claimed constitutional violation), *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (rejecting *Bellamy* and continuing to apply *Colon* in the absence of a discriminatory intent element), *aff'd on other grounds*, 462 F. App'x 79 (2d Cir. 2012), *and Plunkett v. City of N.Y.*, No. 10 Civ. 6778 (CM), 2011 WL 4000985, at *8 (S.D.N.Y. Sept. 2, 2011) (collecting cases rejecting *Bellamy* and applying all five *Colon* categories after *Iqbal*).

Unless and until the Supreme Court or Second Circuit rule otherwise, this Court agrees with those courts that have held that *Iqbal* should not be read to invalidate the *Colon* categories

16

altogether. The *Iqbal* Court specifically noted that "[t]he factors necessary to establish a [constitutional] violation will vary with the constitutional provision at issue." *Iqbal*, 556 U.S. at 676. "It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected [in *Iqbal*] the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'" *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (quoting *Iqbal*, 556 U.S. at 677). Thus, where a plaintiff has alleged a claim that does not include a discriminatory intent element, such as a claim under the Eighth Amendment for denial of medical treatment, the *Colon* test should still apply to the extent that it is "consistent with the particular constitutional provision alleged to have been violated." *Qasem*, 737 F. Supp. 2d at 151-52; *accord Delgado v. Bezio*, No. 09 Civ. 6899 (LTS), 2011 WL 1842294, at *8-9 (S.D.N.Y. May 9, 2011) (applying the second *Colon* category to a supervisor who allegedly had failed to address a prisoner's grievance). More specifically, if a plaintiff alleges that a constitutional violation is ongoing, and that a defendant, after being informed of a violation through a report or appeal, failed to remedy the wrong, the plaintiff's claim against that defendant should not dismissed under Rule 12(b)(6). *Cf. Jamison v. Fischer*, No. 11 Civ. 4697 (RJS), 2012 WL 4767173, at *5 (S.D.N.Y. Sep 27, 2012) (holding that an official reviewing an appeal of a prison disciplinary hearing cannot be held liable under Section 1983 for a constitutional violation that is not ongoing at the time of the review).

That is the case here. The gravamen of Plaintiff's remaining claim is that Defendants violated his constitutional rights by depriving him of adequate medical care following surgery on his right elbow. Liberally construed, the Complaint further alleges that Defendant Lee, after being informed of that ongoing violation through the grievance process, failed to remedy that

17

wrong. Those allegations fall squarely within the second *Colon* category and, in the circumstances of this case, are adequate to state a claim against Lee. *See, e.g.*, *Delgado*, 2011 WL 1842294, at *9 (holding, in analogous circumstances, that an incarcerated plaintiff had adequately alleged the personal involvement of corrections supervisors who oversaw and participated in the grievance and appeal process); *see also, e.g.*, *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (holding, albeit pre-*Iqbal*, that "[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint"). Accordingly, Plaintiff's money damages claim with respect to his right elbow is dismissed as to all Defendants other than Lee in his individual capacity.

Significantly, Plaintiff seeks not only monetary damages for his right elbow claim, but also declaratory and injunctive relief. (Compl. ¶¶ 76, 87-89). And although unmentioned by Defendants, the "'[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983.'" *Duffy v. Evans*, No. 11 Civ. 7605 (JMF), 2012 WL 4327605, at *4 n.2 (S.D.N.Y. Sept. 19, 2012) (quoting *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) (citation omitted)). Instead, to pursue a claim for declaratory or injunctive relief under Section 1983, "the official against whom the action is brought [must have] a direct connection to, or responsibility for, the alleged illegal action." *N.Y. Youth Club v. Town of Smithtown*, 867 F. Supp. 2d 328, 339 (E.D.N.Y. 2012) (internal quotation mark omitted). More specifically, "an injunction may issue only in circumstances where the state official has the authority to perform the required act." *Briscoe v. Rice*, No. 11-CV-578 (JFB) (ETB), 2012 WL 253874, at *4 (E.D.N.Y. Jan. 27, 2012) (internal quotation marks omitted).

Applying those standards here, there is no basis to dismiss Plaintiff's right elbow claim to the extent it seeks declaratory or injunctive relief against Defendants Brian Fischer, the Commissioner of the New York State Department of Corrections; Dr. Lester Wright, the Deputy Commissioner of the Medical Department for the State of New York Department of Corrections; Lee, the Superintendent of Green Haven; and Franco, the Deputy Superintendent. (Compl. ¶¶ 87-89). For one thing, Defendants fail to make any argument as to Plaintiff's claims for declaratory or injunctive relief — even though they themselves observe that "[p]ersonal involvement of an individual defendant . . . is a prerequisite *to an award of damages* under § 1983." (Defs.' Mem. 15 (emphasis added)). For another, liberally construed, the Complaint states a plausible claim for declaratory or injunctive relief against these Defendants, as — by virtue of their supervisory positions alone — they presumably have "a direct connection to, or responsibility for, the alleged illegal action[s]," *N.Y. Youth Club*, 867 F. Supp. 2d at 339, and "the authority to perform the required act," *Briscoe*, 2012 WL 253874, at *4 (internal quotation marks omitted), namely, obtaining adequate medical care for Plaintiff. Accordingly, to the extent that it seeks declaratory or injunctive relief, Plaintiff's right elbow claim survives as to Defendants Fischer, Wright, Lee, and Franco.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss (Docket No. 37) is GRANTED in part and DENIED in part. In particular, all of Plaintiff's claims against the moving Defendants are dismissed except for the claim relating to denial of adequate medical care for his right elbow, which survives only to the extent that claim seeks money damages from Defendant Lee in his individual capacity and declaratory and injunctive relief from Defendants Fischer, Wright, Lee, and Franco.

In addition, as Plaintiff failed to complete service of the Amended Complaint on Officer B. Hotaling and Officer Beachy, all claims are dismissed as to them for failure to prosecute. Finally, all claims are dismissed as to the John Doe defendants, as the Amended Complaint does not include any allegations with respect to them.

The Clerk of Court is directed (1) to terminate Defendants Hotaling and Beachy and all John Doe Defendants; (2) to terminate Docket No. 37; and (3) to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: April 5, 2013
       New York, New York

_____
JESSE M. FURMAN
United States District Judge