UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  03/04/2015
```

------------------------------------------------------------------X
                                         :

GUY ZAPPULLA,
                                         :

                    Plaintiff,        :         11-CV-6733 (JMF)

                                         :

             -v-                      :      OPINION AND ORDER

ANTHONY J. ANNUCCI, et al.,           :

                                         :

                  Defendants.     :

                                         :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Guy Zappulla ("Plaintiff"), an inmate at Clinton Correctional Facility

("Clinton"), filed this civil rights action against staff members of the New York State

Department of Corrections and Community Supervision ("DOCCS"), alleging Eighth and

Fourteenth Amendment violations arising from his allegedly inadequate medical treatment while

in DOCCS custody.  Defendants Anthony Annucci, Acting Commissioner of DOCCS; Dr. Carl

Koenigsmann, Chief Medical Officer of DOCCS; and William Lee, Superintendent of Green

Haven Correctional Facility ("Green Haven") — the only Defendants remaining in the case after

this Court granted in part Defendants' motion to dismiss (Docket No. 58) — now move, pursuant

to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Plaintiff's

remaining claims.  For the reasons that follow, Defendants' motion is GRANTED.

**BACKGROUND**

The following facts, taken from the Amended Complaint and the admissible materials submitted by the parties, are viewed in the light most favorable to Plaintiff, the non-moving party. *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).[1]

**A. Plaintiff's Claims Relating to his Left Shoulder**

In December 2009, Plaintiff, complaining of shoulder pain, visited the medical department at Clinton. (Am Compl. ¶ 44). According to Plaintiff, he was diagnosed with a rotator cuff tear in his left shoulder in January 2010. (*Id.* ¶ 47). In a grievance filed on April 26, 2010, Plaintiff objected to the treatment of his left shoulder, along with the treatment of his right elbow, indicating that he was told that he would "have to exhaust all non-surgical options before Albany would approve any surgical intervention" on his shoulder and requesting that his shoulder be "repaired," or that he "at the very least [be] seen by the orthopedic surgeon." (Decl. Christina Okereke (Docket No. 112) ("Okereke Decl."), Ex. C at 4-5). The Inmate Grievance Review Committee ("IGRC") and — on appeal — the Clinton Superintendent, who was never a party to this action, addressed only the treatment of Plaintiff's right elbow, indicating that an

---

[1]     Defendants argue in their reply memorandum that, because Plaintiff failed to submit a counterstatement to Defendants' statement of undisputed facts as required by Local Civil Rule 56.1, Defendants' motion for summary judgment should be granted in its entirety on the basis of their uncontroverted facts. (Reply Mem. Law Further Supp. Defs.' Mot. Summ. J. (Docket No. 120) ("Defs.' Reply Mem.") 1-3). While it is true that "a non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted," a court must still, at the very least, "ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production" before summary judgment may be entered. *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). Moreover, as Defendants correctly note (Defs.' Reply Mem. 3), a district court may, in its discretion, "opt to conduct an assiduous review of the record even where one of the parties has failed to file [a Local Rule 56.1] statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted). Given Plaintiff's *pro se* status, the Court exercises its discretion to conduct such a review here.

orthopedic specialist had already provided advice as to the proper treatment of Plaintiff's elbow (*Id.*, Ex. C at 11) and that a further consultation with an orthopedic specialist would be scheduled (*Id.*, Ex. C at 6).  On appeal to DOCCS's Central Office Review Committee ("CORC"), the CORC ruled that Plaintiff was receiving proper care for his shoulder, noting that he had recently seen his primary care provider twice to address his shoulder pain and was approved for a third upcoming appointment.  (*Id.*, Ex. C at 1).  Plaintiff did not file any further grievances in connection with his left shoulder.  (*Id.*, Ex. B ("Zappulla Depo.") at 89:5-9; Defs.' Statement Pursuant Local Civil Rule 56.1 (Docket No. 109) ("Defs.' Rule 56.1 Statement") ¶ 48).  Additionally, Plaintiff visited a primary care doctor in May 2011 in connection with his shoulder pain.  While the doctor recommended surgery on Plaintiff's right shoulder, he did not make the same recommendation for Plaintiff's left shoulder; instead, the only recommendation recorded in the doctor's report is that Plaintiff engage in "no lifting until symptoms improve."  (Okereke Decl., Ex. E at 4).

**B.  Plaintiff's Claims Relating to his Right Elbow**

Beginning in October 2009, Plaintiff also sought medical treatment for his "destroyed" right elbow — which appeared to be causing Plaintiff pain as a result of degenerative joint disease.  (*Id.*, Ex. C at 6-7).  Plaintiff was scheduled for surgery on March 9, 2010; the surgery was aborted, however, when surgeons began the procedure and realized that far more invasive reconstructive surgery was needed.  (*Id.*, Ex. C at 7).  Thereafter, Plaintiff filed the grievance mentioned above, also relating to his left shoulder.  (*Id.*).  In the grievance, however, Plaintiff did not request further treatment for his right elbow, but rather requested only a consultation with a specialist for his left shoulder.  (*See id.*).  On August 24, 2010, Plaintiff was transferred to Green Haven in order to undergo the more invasive surgery at nearby Westchester Hospital.  (Zappulla

Depo. 39:17-23).  After undergoing surgery at Westchester Hospital on August 26, 2010,

Plaintiff was sent back to Green Haven's facility hospital on that same day.  (*Id.* at 40:3-23).

Plaintiff remained at Green Haven until around September 24, 2010, when he was transferred

back to Clinton.  (*Id*. at 51:12-20; Defs.' Rule 56.1 Statement ¶ 6).

      While at Green Haven, Plaintiff objected to the medical care (or alleged lack thereof)

provided to him post-surgery — claiming that he was not receiving physical therapy for his

elbow.  (Am. Compl. ¶¶ 18, 65; Defs.' Rule 56.1 Statement ¶ 8).  Plaintiff refused to attend his

follow-up medical examinations on August 31, 2010, and September 16, 2010, and indicated on

his refusal forms that he "want[ed] to go back to [his] facility, versus being locked down in the

hospital here" and "would just like to go back to Clinton so [he could] get physical therapy as

well as other medical care."  (Okereke Decl., Ex. D).  Plaintiff also filed a grievance with Green

Haven's Inmate Grievance Program ("IGP"), dated September 5, 2010, protesting his inability to

obtain physical therapy and requesting a transfer back to Clinton.  (Decl. William Lee (Docket

No. 111) ("Lee Decl."), Ex. B at 1; Defs.' Rule 56.1 Statement ¶¶ 9-11).  After Plaintiff's

grievance was denied by the IGRC on September 22, 2010, Plaintiff appealed the decision to

Defendant Lee on October 3, 2010.  (Lee Decl., Ex. B at 2).  By that time, however, Plaintiff had

already been transferred back to Clinton.  (Zappulla Depo. 51:12-17; Defs.' Rule 56.1 Statement

¶¶ 20-21).  On October 22, 2010, Lee issued his decision on Plaintiff's appeal, finding — based

on a September 14, 2010 report prepared by Green Haven Facility Health Services Director Dr.

Frederick Bernstein in connection with the IGP office's investigation of Plaintiff's grievance

(Lee Decl., Ex. C; Defs.' Rule 56.1 Statement ¶¶ 17-18) — that Plaintiff's medical care, without

physical therapy, had been "appropriate" because Plaintiff's "post-op[eration] care requires only

passive range of motion of the surgical joint site, which can be accomplished by the grievant on

his own, without physical therapy." (Lee Decl., Ex. D).  Plaintiff appealed Lee's decision to the CORC on November 5, 2014.  (*Id.*).  He did not file any other grievances based on the medical care of his right elbow.  (Zappulla Depo. 46:13-23).

## C.  Procedural History

The procedural history in this case is lengthy, but can be summarized briefly.  Plaintiff filed the action on September 22, 2011, and the case was initially assigned to the Honorable Richard J. Holwell.  (Docket Nos. 1, 3).  After the case was reassigned to the undersigned (Docket No. 20) and Defendants filed a motion to dismiss (Docket No. 26), Plaintiff filed the Amended Complaint (Docket No. 32).  Defendants then moved to dismiss the Amended Complaint.  (Docket No. 37).  In an Opinion and Order issued by this Court in April 2013, *see* 2013 WL 1387033 (S.D.N.Y. Apr. 5, 2013) ("*Zappulla I*"), and a ruling on Defendants' subsequently filed Motion for Reconsideration (Docket Nos. 64, 72), this Court dismissed all of Plaintiff's claims except "(1) his claims for monetary damages related to his right elbow injuries against Defendant Lee in his individual capacity and (2) his claims for injunctive and declaratory relief related to both his right elbow and left shoulder injuries against the successors to Defendants Fischer and Wright," who had since retired (Order (Docket No. 72) ("June 5, 2013 Order") 4) — successors who were later identified as Defendants Annucci and Koenigsmann (Docket No. 73).  On January 10, 2014, after Defendants filed their first motion for summary judgment in this case (Docket No. 84), the Court issued an order of dismissal upon being advised that the parties had reached a settlement (Docket No. 95).  After the settlement fell through, however, the Court re-opened the case on May 23, 2014 (Docket No. 107), and Defendants filed the instant motion.  (Docket No. 108).

**LEGAL STANDARDS**

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits

supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

When a summary judgment motion is brought against a *pro se* litigant, as here, the Court must afford the non-movant with "special solicitude" in the construction of pleadings and motions and in the enforcement of procedural rules. *See Tracy v. Freshwater*, 623 F.3d 90, 100-04 (2d Cir. 2010) ("[I]n light of the particular difficulties presented by a motion for summary judgment . . . a district court errs by failing to advise a *pro se* litigant of the nature of such a motion and the consequences of failing to respond to it properly . . ."). That special solicitude, however, does not "relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). Specifically, a *pro se* Plaintiff opposing summary judgment must still "come forward with evidence demonstrating that there is a genuine dispute regarding material fact." *Bennett v. Bailey*, No. 07-CV-7002 (PKC), 2010 WL 1459192, at *3 (S.D.N.Y. Apr. 9, 2010).

## DISCUSSION

### A. Plaintiff's Remaining Claim Against Defendant Lee

Plaintiff's surviving claim against Defendant Lee relates to Lee's alleged involvement in the denial of appropriate medical care for Plaintiff's right elbow while Plaintiff was incarcerated at Green Haven following his surgery of August 26, 2014. (Am. Compl. ¶¶ 66, 68; *id.*, Ex. 17). *See Zappulla I*, 2013 WL 1387033, at * 9-10. As Plaintiff's claim against Defendant Lee survives only insofar as he is seeking monetary damages for Lee's actions in his individual capacity (*see* June 5, 2013 Order at 4), Plaintiff must prove that Lee was personally involved in the alleged constitutional violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding

that, in order to establish personal involvement for purposes of a Section 1983 action, a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is . . . a prerequisite to his liability on a claim for damages . . . ."). To satisfy the personal-involvement requirement, a plaintiff must show, at a minimum, that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Zappulla I*, 2013 WL 1387033, at *9 (noting that some of the *Colon* categories may no longer be valid after *Iqbal*).

   In denying Defendants' motion to dismiss with respect to Lee, this Court ruled that Plaintiff had plausibly pleaded Lee's personal involvement in the denial of adequate medical care by alleging "that Defendant Lee, after being informed of that ongoing violation through the grievance process, failed to remedy that wrong." *Zappulla I*, 2013 WL 1387033, at *9-10. More specifically, the Court noted in a pre-trial conference with the parties that plaintiff's original grievance regarding his inadequate medical care, which Plaintiff attached to his Amended Complaint (Am. Compl., Ex. 7), "appears to have been filed on September 8, 2010, which is to say that on its face Lee may well have had an opportunity to act on it before the plaintiff's transfer." (Tr. of June 5, 2013 Telephone Conf. at 3:16-19).

With the benefit of the full record on summary judgment, however, the Court concludes that that was not the case. Specifically, Plaintiff did not appeal the IGRC's decision to Lee until October 3, 2010 — more than a week after he was transferred from Green Haven back to Clinton. (Lee Decl., Ex. B at 2). Accordingly, by the time Lee was informed of Plaintiff's grievance, Lee no longer had the power to remedy any issues with Plaintiff's medical care, as Plaintiff was no longer in Green Haven's custody. *See Burton v. Lynch*, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (finding no personal involvement where the plaintiff was transferred to another facility before defendant received the plaintiff's grievance appeal); *see also* N.Y. CORRECT. LAW § 18 (2-3) ("[T]he superintendent of a correctional facility shall have the supervision and management . . . [and] shall direct the work and define the duties of all officers and subordinates *of the facility*." (emphasis added)). It follows that he was not personally involved in any constitutional violations of Plaintiff's rights.[2]

In arguing otherwise, Plaintiff contends that Lee must have been aware of his inadequate medical treatment while he was at Green Haven, and hence should be held liable for the failure to intervene. (Mem. Law Supp. Pl.'s Second Opp'n Summ. J. (Docket No. 117) ("Pl.'s Mem.") 13). For example, Plaintiff cites a three-way phone call he made to the central DOCCS medical department in Albany to complain of his medical treatment (a call which was ended by several corrections officers after only minutes), arguing that the person to whom he spoke in Albany "did not call the officers personally. It is more likely she called the front office at Green Haven,

---

[2]     In that regard, Plaintiff's objection that it is "preposterous to claim that once an inmate leaves a facility . . . the constitutional violation simply disappear[s]" misses the point. (Pl.'s Mem. 12). The point is that, whether or not there was a constitutional violation, Lee was not personally involved in it — and cannot be held individually liable for it — because he had no authority to remedy any issues with Plaintiff's medical care when those issues first came to his attention.

and informed security staff of the issue." (Pl.'s Mem. 13; *see also* Zappulla Depo. at 49:10-50:23). Plaintiff also asserts that Lee must have known of his inadequate medical treatment because he was refusing meals in protest, and a DOCCS directive (which Plaintiff did not submit to the Court) requires that the superintendent of a facility be notified of any hunger strikes. (Pl.'s Mem. 13). But without any evidence that Lee was, in fact, notified of the underlying reasons for Plaintiff's unauthorized phone call and his hunger strike — let alone notified of those events themselves — Plaintiff's arguments amount to mere "metaphysical doubt[s] as to the material facts," which are insufficient to survive a motion for summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Plaintiff also argues that, even if Lee was not personally involved because he failed to act on knowledge of the allegedly inadequate medical care, he was nonetheless personally involved in the alleged constitutional violations because "[if] he had no knowledge of the above acts" it "clearly shows he was negligent." (Pl.'s Mem. 14). There is some doubt, however, that the fourth *Colon* category to which Plaintiff alludes remains valid in light of *Iqbal*. *See, e.g.*, *Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801 (SAS), 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010) (summary order). But even if it is still valid, Plaintiff has not established that Lee was grossly negligent in his supervision of his subordinates. As defined by the Second Circuit, gross negligence is the "kind of conduct where the defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." *Poe v. Leonard*, 282 F.3d 123, 140 n.14 (2d Cir. 2002) (internal quotation marks and alterations omitted). Plaintiff has failed to submit any admissible evidence that Lee's conduct rose to that level of culpability. Instead, he rests his claims on conclusory allegations in his memorandum

(*see* Pl.'s Mem. 13) — statements that are unquestionably insufficient to survive a motion for summary judgment. *See Felix-Torres v. Graham*, 687 F. Supp. 2d 38, 63 (N.D.N.Y. 2009) (granting summary judgment on the plaintiff's claims against superintendent because "no evidence has been proffered as to how [the superintendent] was negligent . . . or that he should have known that his subordinates or procedures he instituted or oversaw were deficient."). Accordingly, the motion for summary judgment with respect to Plaintiff's remaining claim against Lee must be and is granted.

**B.  Plaintiff's Remaining Claims Against Defendants Annucci and Koenigsmann**

As noted, Plaintiff also brings claims against Defendants Annucci and Koenigsmann, successors to former Defendants Fischer and Wright, for declaratory and injunctive relief relating to inadequate medical care for his left shoulder and right elbow.  (*See* June 5, 2013 Order at 4; Am. Compl. ¶¶ 76, 78, 86-89).  As the Court noted in its Opinion & Order on Defendants' motion to dismiss, "'[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983.'" *Zappulla I*, 2013 WL 1387033, at *10 (quoting *Duffy v. Evans*, No. 11-CV-7605 (JMF), 2012 WL 4327605, at *4 n.2 (S.D.N.Y. Sept. 19, 2012)).  Nevertheless, in order to bring a claim for any type of relief under Section 1983, including a claim for declaratory or injunctive relief, the Prison Litigation Reform Act ("PLRA") requires that a plaintiff first exhaust all administrative remedies.  *See* 42 U.S.C. § 1997e(a).  Many courts in this Circuit "have held that where, as here, a plaintiff brings a section 1983 claim against defendants not previously named in the administrative grievance, the administrative process was not exhausted with respect to those defendants." *Voorhees v. Goord*, No. 05-CV-1407 (KMW) (HBP), 2006 WL 1888638, at *7 (S.D.N.Y. Feb. 24, 2006); *see also Collins v. Goord*, 438 F. Supp. 2d 399, 413 (S.D.N.Y.

2006) (dismissing plaintiff's claims against several defendants because his grievance "[did] not name or even allude generally to [those] defendants"); *Turner v. Goord*, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005) ("[T]he mere fact that plaintiff filed *some* grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance.").

In this case, Plaintiff did not name Defendants Annucci and Koenigsmann (or their predecessors, Fischer and Wright, for that matter) in any of the grievances at issue.  (*See* Lee Decl., Ex. B; Okereke Decl., Ex. C).  Nor is there evidence that Defendants were made aware of the grievances.  Plaintiff has thus failed to exhaust his administrative remedies as to Defendants Annucci and Koeningsmann, and his claims against them must be dismissed.  Indeed, forcing Defendants "to litigate a federal lawsuit premised on allegations that either were never made below or . . . they had no reason to address would make a mockery of the exhaustion requirement." *Luckerson v. Goord*, No. 00-CV-9508 (JSR), 2002 WL 1628550, at *2 (S.D.N.Y. July 22, 2002).[3]

---

[3]     Although not addressed by either party, it is worth mentioning that courts in this Circuit have found several exceptions to the exhaustion requirement.  "[W]hen an inmate plausibly seeks to challenge defendants' contention that he has failed to exhaust administrative remedies under the PLRA, the Court . . . must consider: (1) whether the administrative remedies were, in fact, available to the prisoner; if not, the exhaustion requirement is inapplicable; (2) if those remedies were available, whether the defendants are estopped from raising the affirmative defense of non-exhaustion because their actions inhibited the inmate's exhaustion of remedies, or because they forfeited the defense by failing to raise or preserve it . . . and, finally, (3) whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to exhaust." *Harris v. Fischer*, No. 11-CV-6260 (CM) (JLC), 2014 WL 3859242, at *6 (S.D.N.Y. Aug. 1, 2014) (internal quotation marks and citations omitted).  Plaintiff makes no argument that he falls within these exceptions, and there is no evidence suggesting that he does.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in its entirety, and the Amended Complaint is dismissed.[4]  The Clerk of Court is directed to terminate Docket No. 108 and to close the case.  The Clerk of Court is further directed to mail a copy of this Order to Plaintiff.

SO ORDERED.

Date:   March 4, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[4]      Accordingly, the Court need not, and does not, reach Defendants' other arguments for summary judgment.